### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

Petroleum Marketing Group, Inc., *et al.*

     vs.                                        No. 8:19-cv-01256-DNH-CFH

Express Farm, Inc. and Xi Li

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)

The dispute before this Court is cut and dried. Plaintiffs admit that the contract liquidates their damages for unsold gasoline at one cent per unsold gallon. That admission is dispositive. Plaintiffs' only remedy is the liquidated-damages clause. They cannot recover their alleged actual lost profits of 7.5 cents per gallon. Even Plaintiffs agreed that was the law in their initial Complaint, which asked for only one cent per gallon. Indeed, New York law has been settled since 1902 that parties cannot recover actual damages when they lawfully agree to liquidate damages. *McCready v. Lindenhorn*, 65 N.E. 208 (N.Y. 1902). The Second Circuit, the Court of Appeals, and panel after panel of the Appellate Division have made clear that liquidated and actual damages are mutually exclusive remedies under New York law.

Plaintiffs offer no contrary understanding of the law of liquidated damages. That ends this dispute. However, even if Plaintiffs could somehow ignore the exclusivity of liquidated damages, their argument still fails on its own terms. The contract liquidates all "contract damages" for the wrongful failure to buy gasoline. Plaintiffs claim that their alleged lost profits are not "contract damages." They believe that they are instead recoverable consequential damages.

But Plaintiff's premises directly contradict New York law. Lost profits, including consequential lost profits, are "contract damages." In addition, Plaintiffs' alleged lost profits are not consequential damages. It has been settled in New York since the presidency of John Tyler that lost profits

stemming from the buyer's failure to buy contracted-for goods are general damages, not consequential damages. *Masterton & Smith v. Mayor of Brooklyn*, 7 Hill 61 (N.Y. Sup. Ct. 1845).

ARGUMENT

**I.        Plaintiffs ignore the law of liquidated damages without explanation.**

Plaintiffs' response brief makes at least one thing clear. Both sides agree that the contract liquidates damages for unsold gasoline at one cent per gallon. Plaintiffs candidly admit that "the Parties clearly contemplated that [Plaintiffs] would be entitled to liquidated damages as paragraph 24(h) of the Branded Supply Contract specifically outlines how [Plaintiffs'] contract damages would be calculated should there be a breach." (Doc. 28 at 6). Plaintiffs also explicitly state that those "contract damages" are "$0.01 per gallon." (*Id.* at 7).

Paragraph 24(h) and Plaintiffs' clear admission that it provides for liquidated damages of one cent per unsold gallon are all that matters. The entire point of a liquidated-damages clause is that it liquidates damages. *See generally* BLACK'S LAW DICTIONARY 1014 (9th ed. 2009) (defining "liquidate" as "[t]o ascertain the precise amount of (debt, damages, etc.) by litigation or agreement"); *id.* at 1015 (defining "liquidated damages clause" as a "contractual provision that determines in advance the measure of damages if a party breaches the agreement"). The parties made a contractual agreement about damages. The parties agreed that, in the *exact circumstances alleged here*, Plaintiffs' damages "**shall be**" one cent per unsold gallon. Plaintiffs cannot recover 7.5 cents. "Shall be" does not mean "might or might not be depending on whether Plaintiffs feel like it."

The liquidated-damages clause is Plaintiffs' "exclusive" remedy for Defendants' alleged failure to buy gasoline. New York's Appellate Division explained that this rule has been settled since 1902 in *X.L.O. Concrete Corp. v. John T. Brady & Co.*, 482 N.Y.S.2d 476, 479 (App. Div. 1984), *aff'd*

489 N.Y.S. 799 (N.Y. 1985). There, a contract provided for liquidated damages. Accordingly, the

Appellate Division reversed the trial court for failing to strike a request for actual and consequential

damages, exactly the issue before this Court. Defendants are loathe to use a lengthy block quote, but

the case so absolutely settles the issue before this Court that they must:

> John T. Brady and Company, a general contractor, entered into an agreement
> with New York University (N.Y.U.) to [build] a new residence hall for
> students attending the University's School of Law. . . . The contract . . . .
> contained a liquidated damage clause entitling N.Y.U. to deduct from any
> amounts otherwise due Brady $2,000 per day for each day beyond June 15,
> 1981 that the work remained uncompleted [N.Y.U. presented evidence that the
> residence hall was not completed by June 15, 1981.]
>
> The June 15, 1981 completion date was critical to N.Y.U., which was
> concerned that the residence hall be ready to house the 630 or more students
> who were scheduled to arrive for the beginning of the fall semester. . . .
>
> N.Y.U.[] . . . . seeks actual and consequential damages caused by, *inter alia,*
> Brady's alleged delay in its performance of the contract. [John T. Brady and
> Company moved for summary judgment, reasoning] that N.Y.U. is precluded
> from asserting a delay damage claim against them since the contract's
> liquidated damage clause provides the sole and exclusive remedy for any delay
> damage sustained by it. [The trial court] denied the motion, finding triable
> issues of fact. We reverse and strike . . . any request for actual and
> consequential delay damages.
>
> The rule is well-established that a valid contractual provision for liquidated
> damages controls the rights of the parties in the event of a breach,
> notwithstanding that the stipulated sum may be less than the actual damages
> allegedly sustained by the injured party. (*General Supply & Construction Co.
> v. Goelet*, 241 N.Y. 28, 37–38, 148 N.E. 778; *Estate of Richter v. Novo Corp.*,
> 43 A.D.2d 1, 349 N.Y.S.2d 101; *Sulyok v. Penzintezeti Kozpont Budapest*, 279
> App.Div. 528, 111 N.Y.S.2d 75.) As early as 1902 the Court of Appeals
> recognized that "when the parties by their contract provide for the
> consequences of a breach, lay down a rule to admeasure the damages and agree
> when they are to be paid, the remedy thus provided must be exclusively
> followed." (*McCready v. Lindenhorn*, 172 N.Y. 400, 409, 65 N.E. 208.) Thus,

where the contract contains a legally enforceable provision for the payment of stipulated damages to a party for a breach, since the provision's sole purpose is to prevent, in the event of breach, any question as to the amount that shall be recovered therefor, **actual damages are not at issue and the only question is as to the breach.** (*City of New York v. Seely-Taylor Co.*, 149 App.Div. 98, 103, 133 N.Y.S. 808, aff'd 208 N.Y. 548, 101 N.E. 1098.) Hence, even though its actual delay damages may, in fact, be greater than $2,000 per day, **N.Y.U. is, as a matter of law, limited to the sum for which it bargained.**

*Id.* (emphasis added).

The Court of Appeals affirmed on the same ground in a one-paragraph opinion. 489 N.Y.S. 799 (1985). *X.L.O.* directly controls the issue before this Court and decides it in Defendants' favor. Moreover, a number of precedential New York decisions and Second Circuit decision applying New York law say the same thing. *VACOLD LLC v. Cerami*, 545 F.3d 114, 130 (2d Cir. 2008) ("**[A] liquidated damages provision precludes a party from recovering lost profits** and other measures of damages."); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 71 (2d Cir. 2004) ("**liquidated and actual damages are mutually exclusive remedies under New York law**"); *Wenger Const. Co. v. City of Long Beach*, 59 N.Y.S.3d 404, 407 (App. Div. 2017) (**"[A] valid contractual provision for liquidated damages controls the rights of the parties in the event of a breach.**"); *Grynberg v. Advance Nanotech, Inc.*, 912 N.Y.S.2d 205, 205 (App. Div. 2010); *Fed. Realty Ltd. P'ship v. Choices Women's Med. Ctr.*, N.Y.S.2d 159, 161 (App. Div. 2001); *Smith v. Putnam*, N.Y.S.2d 725, 727 (App. Div. 1988); *Mars Assocs., Inc. v. Facilities Dev. Corp.*, 508 N.Y.S.2d 87, 88 (App. Div. 1986); *J.R. Stevenson Corp. v. Westchester County*, 493 N.Y.S.2d 819, 823 (App. Div. 1985); *Babylon Assocs. v. Suffolk County*, 475 N.Y.S.2d 869, 875 (App. Div. 1984); *see also LG Capital Funding, LLC v. FLASR, Inc.*, 422 F. Supp. 3d 611, 627 (E.D.N.Y. 2018); *Agerbrink v. Model Serv. LLC*, 196 F. Supp. 3d 412, 417–18 (S.D.N.Y. 2016); *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 426 (S.D.N.Y. 2004).

– 4 –

Plaintiffs do not cite a single contrary decision. Even though Defendants' opening brief made abundantly clear that they were arguing that the liquidated-damages clause controls and provided a lengthy discussion of New York law on that point, Plaintiffs did not even try to explain why Defendants were wrong about the law of liquidated damages.

Instead of offering meaningful argument about the law of liquidated damages, Plaintiffs just quibbled with Defendants' citation to *Nomura Home Equity Loan, Inc., Series 2006–FM2 v. Nomura Credit & Capital, Inc.*, 92 N.E. 3d 743, 747 (N.Y. 2017). *Nomura* rejected any claim for money damages for breach of representations and warranties because the contract prohibited any claim for money damages. It instead provided for a non-monetary "sole remedy." Plaintiffs claim that, because the contract at issue here does not specify liquidated damages as the "sole remedy" for failing to buy gasoline through 2023, they can also get their alleged actual lost profits.

But Plaintiffs miss the point. New York law does not require contracts to use the phrase "sole remedy" to make liquidated damages the sole monetary remedy for a breach. Instead, liquidated damages are the sole remedy as a matter of law.[1] Accordingly, this Court should dismiss Count III of the Amended Complaint with leave to assert a claim for only one cent per gallon.

## II.     Plaintiffs' theory that they are entitled to lost profits of 7.5 cent per gallon as consequential damages ignores basic contract law.

As detailed above, the liquidated-damages clause precludes the recovery of actual lost profits. That resolves the issue before this Court without further analysis. However, even operating in the Alice-in-Wonderland world where liquidated-damages clauses are not exclusive remedies, Plaintiffs' argument still fails on its own terms.

---

[1] *Nomura* says nothing about the law of liquidated damages. Defendants cited it only to show that New York law enforces even severe contractual limitations on damages. The litany of cases cited above, not *Nomura*, show that liquidated damages are an exclusive remedy.

The crux of Plaintiffs' argument, buried in footnote 4, is that the contract liquidates only "contract damages." They claim that lost profits are not "contract damages." Supposedly, they are instead recoverable consequential damages. But both premises are wrong. As a result, even ignoring the exclusivity of liquidated damages, Plaintiffs' emphasis that they did not waive their right to consequential damages is irrelevant.

First, lost profits stemming for a party's breach of contract are "contract damages." Plaintiffs do not explain exactly what they think "contract damages" means or cite any authority to show that they do not include consequential damages. But the phrase "contract damages" does not refer to some limited category of damages that excludes consequential damages. The obvious meaning of "contract damages" is a party's damages for breach of contract. Indeed, the Court of Appeals has used the term "contract damages" to refer to all damages for breach of contract besides punitive damages that are "recoverable if necessary to vindicate a public right." *N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (citing *Rocanova v. Equitable Life Assur. Soc'y,* 83 N.Y.2d 603 (1994)); *see Am. List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 42 (1989) (describing consequential damages as a type of "contract damages").

Second, Plaintiffs' alleged lost profits simply are not consequential damages. Plaintiffs seek lost profits from a buyer's allegedly wrongful refusal to buy contracted-for goods. Those alleged lost profits are not consequential damages. Since 1845, New York law has been clear that they are general damages. *See Masterton & Smith v. Mayor of Brooklyn*, 7 Hill 61, 69–70 (N.Y. Sup. Ct. 1845) (awarding general damages for lost profits from the buyer's wrongful failure to buy contracted-for marble); *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 n.20 (2d Cir. 2007) (discussing *Masterton*); *see, e.g., Thomson-Houston Elec. Co. v. Durant Land Imp. Co.*, 144 N.Y. 34 (1894) (relying on *Masterton*).

– 6 –

Under New York law, lost profits are consequential damages only when they stem from the effect of a breach of contract on "collateral business arrangements." The Second Circuit's decision in *Tractebel* amply illustrates that and explains that lost profits were general damages under circumstances almost identical to this case. There, Tractebel agreed to buy minimum amounts of electrical power from AEP for twenty years. Tractebel repudiated the contract shortly thereafter. AEP sued, seeking lost profits over the remaining term of the contract. After a trial, the district court found that lost profits were not recoverable. It reasoned that the lost profits were available only as consequential damages, but that they were too uncertain to award. 487 F.3d 89, 92–94.

The Second Circuit reversed, finding that the lost profits were recoverable as general damages. It explained that lost profits are consequential damages only when "the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. . . . Every lawyer will recall from his or her first-year contracts class the paradigmatic example of *Hadley v. Baxendale,* where Baxendale's failure to deliver a crank shaft on time caused Hadley to lose profits from the operation of his mill. 9 Ex. 341, 156 Eng. Rep. 145 (1854)." *Id.* at 109.

But the lost profits in *Tractebel* had nothing to do with collateral business relationships. The lost profits instead directly resulted from Tractebel's failure to purchase all contracted-for electrical power. The Second Circuit thus found that the damages were "most certainly" general damages. The profits were "precisely what [AEP] bargained for." *Id.* at 109–10.

This case is almost identical to *Tractebel*, except that it involves a ten-year obligation to buy gasoline instead of a twenty-year obligation to buy electrical power. Plaintiffs' alleged lost profits are "precisely what [Plaintiffs] bargained for." They do not claim that their lost profits stem from

harm to "collateral business arrangements." Their alleged lost profits cannot possibly be consequential damages.

Plaintiffs inexplicably cite *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 11 N.E.3d 676 (N.Y. 2014) to argue otherwise. In *Biotronik*, the Court of Appeals stated the ordinary rule that lost profits are consequential damages when they stem from "collateral business arrangements." But it then carved out an apparent exception, finding that certain lost profits in business relationships with third parties are actually general damages. That ruling has perplexed commentators.[2] But it provides no support to Plaintiffs. If even some collateral lost profits are direct damages, alleged lost profits directly stemming from an alleged breach necessarily are too *a fortiori*.

## CONCLUSION

Defendants ask this Court to dismiss Count III of the Amended Complaint without prejudice to a claim requesting only one cent per allegedly unsold gallon.

Respectfully submitted,

*s/ Daniel J. Auerbach*

Daniel J. Auerbach  Bar Number: 701417
Attorney for Defendants
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
Telephone: (215) 567-1486
Fax: (215) 940-6661
E-mail: dan@gamburglaw.com

Dated: June 28, 2020

---

[2] *E.g.* Michael Hefter, et al., *Direct vs. Consequential Lost Profits: Checking in Five Years After 'Biotronik'*, N.Y.L.J. (Mar. 11, 2019), *available at* bit.ly/2BF24Ku (last visited June 26, 2020); Sevan Ogulluk, et al., *New York's High Court: Lost Profits May Be Recoverable For Breach, Even Where Contracts Preclude Consequential Damages*, JONES DAY INSIGHTS (Apr. 2014), available at bit.ly/3g1a871 (last visited June 26, 2020).

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

Petroleum Marketing Group, Inc., *et al.*

    vs.                                                  No. 8:19-cv-01256-DNH-CFH

Express Farm, Inc. and Xi Li

**PROOF OF SERVICE**

    I hereby certify that this paper was served on the following through this Court's CM/ECF system, which service is proper under Paragraph 5.2 of General Order 22 because he is a Filing User:

Urs Broderick Furrer, Esq.
Harriton & Furrer, LLP
84 Business Park Drive, Suite 302
Armonk, New York 10504

*Counsel for Plaintiffs*

Respectfully submitted,

    *s/ Daniel J. Auerbach*

Daniel J. Auerbach   Bar Number: 701417
Attorney for Defendants
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
Telephone: (215) 567-1486
Fax: (215) 940-6661
E-mail: dan@gamburglaw.com

Dated: June 28, 2020